IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**　　　　　　　　　　　　　　　　**PLAINTIFF**

**V.**　　　　　　　　**CASE NO. 5:16-CR-50036**

**DAPHNE CRAWFORD**　　　　　　　　　　　　　　　　　　　　**DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant Daphne Crawford's Motion to Suppress (Doc. 25) and the Government's Response (Doc. 26). Crawford is charged with making threats by interstate commerce, in violation of 18 U.S.C. § 875(c), and seeks to suppress evidence related to firearms and ammunition seized during law enforcement's June 23, 2016 search of her residence. The Court held a suppression hearing on November 4, 2016, during which it heard testimony, received evidence, and took argument from the parties. From the bench, the Court rejected each of the three arguments advanced by Ms. Crawford, and **DENIED** her Motion (Doc. 25) in full. To the extent that anything in this Memorandum Opinion and Order differs from the Court's pronouncement from the bench, this Order controls.

## I. BACKGROUND

The facts giving rise to this Motion originate from a verbal dispute between Alan Lewis Crawford Jr.[1] and a waitress at Mel's Diner in Prairie Grove, Arkansas on May 24, 2016. The dispute reportedly arose because Mr. Crawford claimed the waitress gave him and Ms. Crawford deficient service due to their status as Muslims and/or non-Christians.

---

[1] Ms. Crawford has adopted the surname "Crawford," but is apparently not legally married to Mr. Crawford.

1

Before leaving Mel's Diner, Ms. Crawford allegedly looked at the waitress and stated, "people like you are the reason we kill." That night, an individual used the Facebook account of "Umm Ammara Khalid Daphne Crawford" to post derogatory remarks about the waitress.

Later that week, a customer of Mel's Diner learned of the foregoing incident and posted a message on the Facebook page "Awesome Community of Prairie Grove." The message stated: "I would like to know the new people that are Muslim in town. Young[,] white, Muslim, and stayed in the colonial hotel. I would very much like to meet you." An individual using Ms. Crawford's purported account responded to the post by stating, "ask and you shall receive." The user of the account then sent a series of allegedly threatening messages to the customer.

Based on those messages, law enforcement suspected Ms. Crawford of Terroristic Threatening under Ark. Code. Ann. § 5-13-301(a)(1)(A), and applied for a search warrant for her residence—a hotel room at Value Place in Fayetteville, Arkansas—on June 16, 2016. The application sought digital and electronic evidence of the alleged threats, including smartphones, digital cameras, computers, and storage devices such as flash drives. The affidavit accompanying the warrant recounted the aforementioned events, including the following list of Facebook messages allegedly sent by Ms. Crawford to the Mel's Diner customer:

- Daphne wanted to meet at Gaby's in Praire Grove
- Customer replied that they didn't feel comfortable meeting alone
- Daphne told Customer to bring her family
- Daphne told Customer her husband would show up with an AK-47
- Daphne told Customer her husband is a "piece of shit coward"
- Daphne told Customer that they have lots of guns
- Daphne told Customer that her husband is a former navy seal
- Daphne told Customer her husband will shoot him

2

- Daphne told Customer that she ought to shut her up for good now
- Daphne sent Customer a picture of her husband in a Middle Eastern attire kneeling with a weapon described as an assault rifle
- Customer stopped talking to Daphne when the threats got violent

(Doc. 25-1, ¶ 7). Circuit Judge Cristi Beaumont issued the requested search warrant and officers executed it, all on June 16, 2016.

While inside Ms. Crawford's residence, officers discovered and seized ten firearms and a large quantity of ammunition. The firearms included semi-automatic AR-15 assault rifles, a long rifle revolver, a shotgun, and multiple handguns. Some of the firearms were loaded, and at least one firearm was outside of its case on the ground. Meanwhile, the Crawford's toddler was sleeping in bed during the search. The search also uncovered controlled substances, consisting of three one-milligram clonazepam pills and an unidentified amount of marijuana wax. The clonazepam was found on a nightstand next to the bed in which the child was sleeping, and the marijuana wax was found in the freezer. Based on the presence of the firearms, the controlled substances, and the Crawford's child, the officers on scene believed they had probable cause to arrest Ms. Crawford for simultaneous possession of drugs and firearms, Ark. Code Ann. § 5-74-106, and child endangerment, Ark. Code. Ann. § 5-27-206(a)(1), and she was taken into custody at that time.

On June 22, 2016, a grand jury indicted Ms. Crawford on one count of knowingly transmitting a threat in interstate commerce in violation of 18 U.S.C. § 875(c). She was subsequently arrested on that charge and detained at her arraignment. On August 1, 2016, Ms. Crawford filed a motion arguing that the firearms and ammunition obtained during the search of her residence were illegally seized and should be suppressed. (Doc. 17). The Government responded (Doc. 18), but shortly thereafter notified the Court that it

no longer sought to introduce the firearms and ammunition into evidence at trial. Instead, the Government would seek to introduce photographic and testimonial evidence related to the firearms and ammunition. Given this concession, the Court found Ms. Crawford's Motion to be moot at the parties' October 14, 2016 suppression hearing, and allowed Ms. Crawford the opportunity to file a subsequent suppression motion related to the photographic and testimonial evidence.

Her current Motion to Suppress advances three arguments, which can be summarized as follows:

- First, Ms. Crawford contends that the search warrant was facially insufficient, and that all of the evidence from the search must be suppressed accordingly.

- Second, Ms. Crawford alleges that—even if the search warrant was valid—the police exceeded the scope of the warrant by conducting a general exploratory search which included seizing and cataloging the firearms and ammunition. The photographic and testimonial evidence were derivative of this expansion of the search, she argues, and thus are excludable as fruits of the poisonous tree.

- Third, Ms. Crawford argues that—notwithstanding her first two arguments—the seizure of the firearms and ammunition cannot be justified under the plain view doctrine. Additionally, she contends, the photographic and testimonial evidence were derivative of the illegal seizure, and thus are excludable as fruits of the poisonous tree.

The Government responded (Doc. 26) on October 28, 2016, and the Court held a suppression hearing on November 4, 2016. As the Court announced from the bench during that hearing, Ms. Crawford's Motion (Doc. 25) is **DENIED**.

## II. LEGAL PRINCIPLES

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Respecting Ms. Crawford's argument that the search warrant was not issued upon probable cause, "[p]robable cause exists, if under the *totality of the circumstances*, a showing of facts can be made sufficient to create a *fair probability* that evidence of a crime will be found in the place to be searched." *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007) (quotation omitted, emphasis added). When the issuing judge relies solely upon a supporting affidavit to issue a search warrant, "only that information which is found *within the four corners* of the affidavit may be considered in determining the existence of probable cause." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014) (emphasis added).[2] Courts accord "'great deference' to a magistrate's determination as to whether an affidavit establishes probable cause." *Id.* at 873. And, consistent with this showing of deference, "[a] defendant seeking to suppress evidence obtained under a regularly issued search warrant has the burden to show by a preponderance of the evidence that the search warrant was not supported by probable cause." *United States v. Malek*, 2015 WL 5494183, at *7 (D.S.D. Sept. 14, 2015).

---

[2] At the suppression hearing, the Court heard testimony from FBI Special Agent Skoch, who sought the warrant from Judge Beaumont. He testified that Judge Beaumont did not have any other information aside from the supporting affidavit when she reviewed the warrant application and issued the warrant.

5

Turning to Ms. Crawford's argument that the police exceeded the scope of the warrant, "[t]he general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (citation omitted). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). While the burden of proof for an allegation that the Government exceeded the scope of a search warrant does not appear to be clearly developed in the Eighth Circuit, courts have noted that "the burdens of production and persuasion generally rest upon the movant in a suppression hearing." *United States v. Starks*, 193 F.R.D. 624, 628 (D. Minn. 2000) (quoting *United States v. de la Fuente,* 548 F.2d 528, 533 (5th Cir. 1977)). And that "even in those circumstances where the Government has the ultimate burden of persuasion, Defendant has the initial burden of making a prima facie showing of illegality." *Id.* If the Defendant can meet this prima facie showing, "the [G]overnment must show that [the evidence] was not obtained by exploitation of that illegality but instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (quotation and alteration omitted). Accordingly, Ms. Crawford has the initial burden to show that the search exceeded the scope of the warrant, and if met, the Government would have to show that the evidence it seeks to introduce did not flow from that illegality.

Lastly, regarding Ms. Crawford's third argument, when items "not particularly described in the warrant [are] seized, [they] must fall within an exception to the Fourth Amendment's warrant requirement." *United States v. Clay*, 579 F.3d 919, 932 (8th Cir.

2009). One exception is the plain view doctrine. "To qualify under the plain view exception, the government must prove that (1) the item is in plain view; (2) the officer is lawfully located where he may view the object; and (3) the incriminating nature of the evidence is 'immediately apparent.'" *Id.* (quoting *Horton*, 496 U.S. at 136-37). "'Immediately apparent' requires that the agent have 'probable cause to associate the property with criminal activity.'" *Id.* (quoting *United States v. Garner*, 907 F.2d 60, 62 (8th Cir.1990) and *Texas v. Brown,* 460 U.S. 730, 741-42 (1983)). "More specifically, probable cause demands that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Id.* (quotation omitted). "The government bears the burden of proving that this exception to the search warrant requirement applies." *United States v. Green*, 560 F.3d 853, 856 (8th Cir. 2009). And, if it cannot meet its burden of proving that the plain view exception applies, then the Government must "establish by a preponderance of the evidence," *Nix v. Williams*, 467 U.S. 431, 444 (1984), that an exception to the exclusionary rule (such as the inevitable discovery rule, 467 U.S. at 444) applies.[3]

### III. DISCUSSION

#### A. The Sufficiency of the Warrant

As the Court has noted above, probable cause for the issuance of a warrant exists "if under the *totality of the circumstances*, a showing of facts can be made sufficient to create a *fair probability* that evidence of a crime will be found in the place to be searched."

---

[3] To the extent that the Court's formulation of the burdens discussed in this section is in any way errant, it notes that a more defendant-friendly analysis of the burdens would not alter the Court's ruling. It does not view any of Ms. Crawford's three arguments as being particularly close, such that the burden of proof is outcome-determinative.

*Summage*, 481 F.3d at 1077 (quotation omitted, emphasis added). It is a crime under Arkansas law to "threaten[] to cause death or serious physical injury or substantial property damage to another person" with the purpose of terrorizing the person. Ark. Code Ann. § 5-13-301.

At the suppression hearing and in her briefing, Ms. Crawford highlighted several portions of the affidavit that she contends are unrelated to the alleged offense, and thus do not support a showing of probable cause. Conceding, *arguendo*, that the affidavit's discussion of events other than the Mel's Diner incident and ensuing Facebook messages is irrelevant, defense counsel's argument still falls flat. This is so because the remaining relevant portion of the affidavit—concerning the incident at the diner and ensuing Facebook messages—clearly does provide probable cause.

Looking to Paragraph 7 of the supporting affidavit, it identifies a series of statements allegedly made by Ms. Crawford to the Mel's Diner customer. (Doc. 25-1, ¶ 7). This includes mentioning that her husband would show up to a meeting with a firearm, that they own many guns, that her husband will shoot the customer, and that she will shut the customer up for good. *Id.* Moreover, the affidavit makes clear that the alleged threats were transmitted online. *Id.* at ¶¶ 6, 7, 9. It follows that evidence of the alleged threats' transmissions would be found on digital devices owned by the alleged sender. The warrant, accordingly, authorizes a search for digital information and electronic evidence that may be stored on digital devices. (Doc. 25-2).

Even if the warrant were somehow defective, the Court would find that the *Leon* good faith rule applies, and decline to suppress the evidence on that ground. *See United States v. Leon*, 468 U.S. 897 (1984) (exclusionary rule does not bar evidence obtained

by officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate, but ultimately found not to be valid).

### B. The Scope of the Warrant

Ms. Crawford suggests that the searching officers exceeded the scope of the warrant by turning a search for digital evidence into one for firearms and ammunition. The Court disagrees. As it mentioned at the suppression hearing, the objects identified by the search warrant were small—flash drives can be mere centimeters long—so executing the warrant necessitated a thorough search. *See United States v. Weinbender*, 109 F.3d 1327, 1329 (8th Cir. 1997) ("A lawful search extends to all areas and containers in which the object of the search may be found."); *United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir. 1991) (when search warrant was for stolen necklace, police "had a right" to look under a bed and in a coat pocket, where they found a gun and cocaine, because "[t]he necklace could have been concealed in these places"). This made it perfectly permissible for the officers to search in gun cases and ammunition boxes.

Ms. Crawford's reliance on *United States v. Clark*, 531 F.2d 928 (8th Cir. 1976), is not to the contrary. In *Clark*, law enforcement had obtained a warrant to search Clark's business and home (which were in the same structure) for controlled substances. *Id.* at 930. *After* an initial search failed to uncover any controlled substances, the police began examining various tools, electronics, and firearms on the premises, and recording their serial numbers. *Id.* at 930-31. Nearly a month later, an ATF agent informed local police that one of Clark's pistols may have been obtained illegally. *Id.* at 930. Clark was subsequently arrested and charged with three firearms offenses. *Id.* at 931. He moved to suppress the firearm, alleging that the initial search exceeded the scope of the warrant,

and that the plain view doctrine did not apply either. The district court agreed with Clark, and the Government appealed.

The Eighth Circuit affirmed on appeal. It held that the search exceeded the scope of the warrant because "the random recordation of serial numbers from items of personal and business property could not have furthered the officers' ostensible and otherwise legitimate search for controlled substances." *Id.* at 931-32. Then, it held that the plain view exception did not apply because the pistol's incriminating nature was not "immediately apparent." *Id.* at 932.

The difference between *Clark* and the instant case, as to the scope of the warrant, is that the discovery of the firearms and ammunition was made in furtherance of the officer's search for items specified in the warrant. Flash drives can be hidden in gun cases, ammunition boxes, drawers, and containers. The officers in *Clark* exceeded the scope of their search warrant because examining tools, guns, and electronics, and recording their serial numbers, cannot lead to the discovery of controlled substances.

Moreover, the officers' actions in moving all of the firearms they found to a single location, ensuring they were unloaded, photographing, and cataloging them, did not exceed the scope of the warrant either. In *United States v. Malachesen*, 597 F.2d 1232, 1234 (8th Cir. 1979), the Eighth Circuit held that the temporary seizure "for limited safety purposes" involving unloading, uncocking, and temporarily inventorying a firearm during the course of executing a search warrant did not exceed the scope of the warrant. At the suppression hearing, Ms. Crawford argued that *United States v. Prather*, 138 F. Supp. 3d 1059 (S.D. Iowa 2015), is more applicable to the instant case than *Malachesen*. The Court disagrees. *Prather*, which involved the suppression of a firearm handled by the police

during the search of an unoccupied residence, stands for the proposition that there is no *per se* rule that the Fourth Amendment allows officers to handle and catalog firearms uncovered during a search. *Id.* at 1066. Instead, such actions are only permissible under exigent circumstances, such as for officer or public safety. In the instant case, nearly a dozen firearms were found in a small hotel room, with a sleeping child in the bed. As Special Agent Skoch testified, this situation presents special safety challenges: the police cannot constantly monitor all of the firearms if they are left scattered about the room, other hotel guests may attempt to enter the room, and even a small child is capable of discharging a firearm.

Finally, even if the Court would otherwise find that the cataloging and photographing of the firearms exceeded the scope of the warrant, which it would not, that argument is rendered effectively moot by the Court's below finding that the plain-view doctrine applies. That is, because the Court finds that the incriminating nature of the firearms and ammunition was immediately apparent, the officers were permitted to catalog and photograph those items, even if it otherwise would have exceeded the scope of the warrant to do so.

### A. The Plain View Exception

Ms. Crawford's last argument is that the plain view doctrine does not justify the seizure of the firearms and ammunition. The Court disagrees. "To qualify under the plain view exception, the government must prove that (1) the item is in plain view; (2) the officer is lawfully located where he may view the object; and (3) the incriminating nature of the evidence is 'immediately apparent.'" *Clay*, 579 F.3d at 932 (quoting *Horton*, 496 U.S. at 136-37 (1990)). There is little question that the first two prongs of the exception have been

met. The firearms and ammunition were located in a hotel room, and the warrant gave law enforcement authority to search even small containers in the room to find digital storage devices. The only question is whether the incriminating nature of the evidence was "immediately apparent."

For the incriminating nature of an item to be immediately apparent, an officer must have "probable cause to associate the property with criminal activity." *Id.* (citing *United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990)). Probable cause requires "that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Clay*, 579 F.3d at 932; *see also Texas v. Brown*, 460 U.S. 730, 742 (1983) ("A practical, non-technical probability that incriminating evidence is involved is all that is required.").

The Court finds that the firearms and ammunition were useful as evidence of two crimes: child endangerment, Ark. Code. Ann. § 5-27-206(a)(1); and terroristic threatening, 18 U.S.C. § 875(c).[4] The Arkansas Code provision for Endangering the Welfare of a Minor in the Second Degree prohibits a person from "knowingly engag[ing] in conduct [that] creat[es] a substantial risk of serious harm to the physical or mental welfare of . . . a minor." Ark. Code Ann. § 5-27-206(a)(1). "Serious harm to . . . physical . . . welfare" must be a "physical . . . injury that causes: (A) [p]rotracted disfigurement; (B) [p]rotracted impairment of physical . . . health; or (C) [l]oss or protracted impairment of the function of any bodily member or organ." *Id.* Finding a number of firearms unsecured and within reach of a toddler certainly gives the police probable cause to believe that a violation of

---

[4] *See also* Ark. Code. Ann. § 5-13-301(a)(1)(A) (Arkansas Terroristic Threatening).

12

Ark. Code Ann. § 5-27-206(a)(1) has occurred, and the firearms and ammunition in question would be evidence of that crime.

Additionally, the firearms and ammunition are "useful as evidence," *Clay*, 579 F.3d at 932, of Ms. Crawford's commission of the instant offense. As discussed above, the Facebook messages allegedly sent by Ms. Crawford indicate that she and her husband own several firearms, and include a picture of her husband bearing a firearm. The seized firearms and ammunition are, accordingly, useful as evidence to prove Ms. Crawford's identity as the sender of the messages.

Even if, for whatever reason, the plain view exception did not apply, the Court would still lack any basis to exclude testimonial and photographic evidence of the firearms and ammunition. Under the exclusionary rule, evidence obtained by searches and seizures performed in violation of the Fourth Amendment is, generally, inadmissible in court. *See Mapp v. Ohio*, 367 U.S. 643 (1961). The purpose of the rule is to protect the core Fourth Amendment right to be free from unreasonable searches and seizures by deterring police misconduct. *See Leon*, 468 U.S. at 916 ("[T]he exclusionary rule is designed to deter police misconduct . . . ."). To achieve this purpose, the exclusionary rule applies not only to direct products of unlawful searches and seizures, but more attenuated products as well. For example, verbal statements heard during an unlawful search are suppressed in addition to physical items found during that search. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (holding that "verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion"). "Similarly, testimony as to matters observed

during an unlawful invasion has been excluded in order to enforce the basic constitutional policies." *Id.* This principle is called the "fruit of the poisonous tree" doctrine.

The problem for Ms. Crawford is that the testimonial and photographic evidence she seeks to suppress is not derivative from—it is not fruit of—the illegality that she alleges. The officers' observation of the firearms, and the photographs taken of the firearms, occurred *prior to* the seizure that she argues was not justified by the plain view doctrine. Thus, even if the plain view doctrine somehow did not apply, the testimonial and photographic evidence of the firearms and ammunition would not be excludable.

### IV. CONCLUSION

For the reasons stated herein, Ms. Crawford's Motion to Suppress (Doc. 25) is **DENIED**.

**IT IS SO ORDERED** on this 10th day of November, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE